# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| RYAN MONTGOMERY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action: 3:24-cv-2128 |
| | § | |
| | § | With Jury Demand Endorsed |
| EQUIFAX INFORMATION SERVICES LLC, | § | |
| EXPERIAN INFORMATION SOLUTIONS, | § | |
| Inc., TRANS UNION LLC, NATIONSTAR | § | |
| MORTGAGE LLC, successor by merger to | § | |
| PACIFIC UNION FINANCIAL, LLC, and | § | |
| CAPITAL ONE BANK USA NA, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Ryan Montgomery ("Plaintiff"), by and through counsel, for his Complaint against

Defendants, Equifax Information Services LLC**,** Experian Information Solutions, Inc., Trans Union

LLC, Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC and Capital

One Bank USA NA, jointly, severally, and in solido, states as follows:

## I. INTRODUCTION

1.     Three of the Defendants are consumer reporting agencies ("CRAs") as defined by 15

U.S.C. § 1681a(f), and Defendants, Nationstar Mortgage LLC, successor by merger to Pacific Union

Financial, LLC and Capital One Bank USA NA are furnishers of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II.  PARTIES

2.      Plaintiff, Ryan Montgomery, is a natural person residing in Louisville, Ohio, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated  false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district

and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.      Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.      Upon information and belief, Defendant Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C.

§ 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.      Upon information and belief, Defendant Capital One Bank USA NA, which may also hereinafter be referred to as "Capital One," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Virginia company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 1680 Capital One Dr., McLean, VA 22102. Capital One is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III. JURISDICTION AND VENUE

9.      Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

10.     Venue is proper in this District, because CRA Defendants and Furnisher Defendants transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

11. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute(s) sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Pacific Union/Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

12.     Upon information and belief, in or around March 2012 Plaintiff obtained a credit account through Capital One and Capital One assigned account number 517805xxxx, hereinafter ("Capital One account").

13.     Upon information and belief, in or around December 2017 Plaintiff secured a mortgage for his property located at 2307 Wittenburg St., Louisville, OH 44641.

14.     Sometime thereafter, Pacific Union Financial, LLC acquired Plaintiff's mortgage loan and assigned loan number 836700xxxx, hereinafter ("Pacific Union mortgage account").

15. On December 27, 2018, Plaintiff filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiff's chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

16. On March 14, 2019, Plaintiff Chapter 13 payment plan was confirmed. See Exhibit "A".

17. Sometime thereafter, Pacific Union was sold, including all rights, liabilities, mortgage loan servicing responsibilities, and furnishing responsibilities, to Nationstar.

18. Plaintiff's Pacific Union Mortgage was included with the above referenced sale, and thus, was transferred to Nationstar and assigned a loan number of 655727xxxx (hereinafter "Nationstar Mortgage" or "Nationstar Loan").

19. On November 30, 2023, Dynele L. Schinker-Kuharich, Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. Capital One and Nationstar are both listed as scheduled creditors for their respective claims. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "B".

20. On January 18, 2024, Plaintiff was discharged from his chapter 13 bankruptcy, discharged the Capital One account and excepted from discharge Plaintiff's Nationstar mortgage, which was the same mortgage once serviced by Pacific Union. Further, both Capital One and Nationstar are listed in the Notice to Creditors. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "C".

21. Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

22. On or around January 25, 2024, Plaintiff's Chapter 13 Bankruptcy was terminated.

*See* Exhibit "A".

23.     Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Pacific Union/Nationstar mortgage account.

24.     After discharge, and to this day, Plaintiff still lives in the home and makes timely and regular mortgage payments to the now Nationstar Mortgage, has historically made timely and regular payments to both the Pacific Union Mortgage and Nationstar Mortgage, even after Plaintiff's bankruptcy, and plans on continuing to make timely and regular mortgage payments to the Nationstar Mortgage.

25.     Sometime in May 2024, Plaintiff obtained his three-bureau credit report and noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate. A redacted copy of Plaintiff's three-bureau credit report is attached hereto as Exhibit "D".

26.     Within the Equifax credit report Plaintiff noticed that it reported the Capital One account as open when it was an unsecured debt included and discharged through bankruptcy.

27.      Plaintiff also noticed that within the Equifax, Experian, and Trans Union credit reports that they all reported the Pacific Union account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Pacific Union/Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Pacific

Union/Nationstar Mortgage tradelines after the Bankruptcy was discharged. [1]

28.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

29.     In or around June 2024, Plaintiff sent direct disputes to Equifax, Experian, and Trans Union, and requested that the CRA Defendants investigate the reporting of the aforementioned accounts. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the disputed accounts.

30.     Within these dispute letters, Plaintiff described in great detail the issues and the misreporting following his bankruptcy and enclosed copies of either his bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiff's unsigned dispute letters

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

sent to Equifax, Experian, and Trans Union, are attached hereto as Exhibits "E", "F", and "G" respectively.

31.     Equifax responded to Plaintiff on July 5, 2024 and deleted rather than modified both the Capital One and Pacific Union accounts. A redacted copy of Equifax's Response to Plaintiff is attached hereto as Exhibit "H".

32.     Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Capital One and Pacific Union tradelines and gave no explanation as to why it failed to sufficiently update the tradelines when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the Nationstar Mortgage account because it was still open following the bankruptcy discharge.

33.     Equifax's response(s) were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Capita One and Pacific Union Mortgage tradelines.

34.      Plaintiff sent a very clear dispute, and yet Equifax made no changes to the disputed information, bankruptcy status, and/or account status.

35.     Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Capital One and Pacific Union accounts.

36.     Upon the Plaintiff's request to Equifax for verification and addition regarding the Capital One and Pacific Union accounts, and in accordance with Equifax's standard procedures,

Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff's with a response communicating the results. Further, Equifax did not make any attempt to substantially or reasonably verify the Capital One and Pacific Union accounts.

37.     In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact Capital One and Nationstar, therefore, failed to perform any investigation at all.

38.     In the alternative to the allegation that Equifax failed to contact Capital One and Nationstar, it is alleged that Equifax did forward some notice of the dispute to both, and both failed to conduct a lawful investigation.

39.     Experian responded to Plaintiff on July 6, 2024 and deleted rather than modified the Pacific Union tradeline. A redacted copy of Experian's Response to Plaintiff is attached hereto as Exhibit "I".

40.     Experian's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Pacific Union tradeline and gave no explanation as to why it failed to sufficiently update the Pacific Union tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the Nationstar Mortgage account because it was still open following the bankruptcy discharge.

41.     Experian's responses were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Pacific Union Mortgage tradeline.

42.      Plaintiff sent very clear disputes, and yet Experian made no changes to the disputed

information, bankruptcy status, and/or account status.

43.    Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Pacific Union account.

44.    Upon the Plaintiff's request to Experian for verification and addition regarding the Pacific Union mortgage account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Experian failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Experian did not make any attempt to substantially or reasonably verify the Pacific Union Mortgage account.

45.    In the alternative, and in accordance with Experian's standard procedures, Experian failed to contact Nationstar, therefore, failed to perform any investigation at all.

46.    In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

47.    Trans Union responded to Plaintiff on July 11, 2024 and deleted rather than modified the Pacific Union tradeline. A redacted copy of Trans Union's Response to Plaintiff is attached hereto as Exhibit "J".

48.    Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Pacific Union tradeline and gave no explanation as to why it failed to sufficiently update the Pacific Union tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the Nationstar

Mortgage accounts because it was still open following the bankruptcy discharge.

49.     Plaintiff sent a very clear dispute(s), and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

50.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Pacific Union account.

51.     Upon the Plaintiff's request to Trans Union for verification and addition regarding the Pacific Union mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the Pacific Union Mortgage account.

52.     In the alternative, and in accordance with Trans Union's standard procedures, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

53.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

### EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

54.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

55.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit

files it published and maintained concerning the Plaintiff.

56.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

57.     Equifax knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Equifax continued to prepare a patently false consumer report concerning Plaintiff.

58.     Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

59.     After Equifax knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Capital One and Pacific Union mortgage tradelines, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

60.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration,

humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

61. Equifax's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

62. The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EQUIFAX'S VIOLATION OF THE FCRA**

Page 14 of 31

**(15 U.S.C. §1681i)**

63.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

64.    Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

65.    As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online,

telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

66.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

67.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

68.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

69.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

70.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

71.     Experian knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Experian continued to prepare a patently false consumer report concerning Plaintiff.

72.     Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

73.     After Experian knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Pacific Union mortgage tradeline, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

74.     As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing

accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

75.    Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

76.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

77.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

78.    Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed

information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

79.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it

continuously by Defendant.

80.     Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

81.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### TRANS UNION'S VIOLATION OF THE FCRA
#### (15 .S.C. §1681e(b))

82.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

83.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

84.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

85.     Trans Union knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

86.     Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Trans Union readily provided false reports to one or more third parties, thereby

misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

87.     After Trans Union knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Pacific Union mortgage tradeline, it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

88.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety

when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

89.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

90.     The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

### TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

91.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

92.     Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file, and relying upon verification from a source it has reason to know is unreliable.

93.     As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance,

and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

94.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

95.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**NATIONSTAR'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

96.     Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

97.     Furnisher Defendant further violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the Plaintiff's dispute of the Pacific Union mortgage, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of inaccurate information to the Pacific Union mortgage within the consumer reporting agencies reports.

98.     As a result of Furnisher Defendant's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current

loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

99.    Furnisher Defendant's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

**CAPITAL ONE'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

100.    Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

101.    Furnisher Defendant further violated 15 U.S.C. § 1681s-2(b) by failing to fully and

properly investigate the Plaintiff's dispute of the Capital One account, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of inaccurate information to the Capital One account within the consumer reporting agencies reports.

102.    As a result of Furnisher Defendant's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit report; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff's spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and

financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

103.    Furnisher Defendant's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

104.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

105.    Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

106.    Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation

expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

107.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

108.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

109.    Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

110.    Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

111.    Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Ryan Montgomery, prays that this Honorable Court:

A.    Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information

Services LLC, Experian Information Solutions, Inc., Trans Union LLC, Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC and Capital One Bank USA NA, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.   Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.   Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.   Order that the CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendants, Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC and Capital One Bank USA NA, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E.   Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Date Filed: <u>August 20, 2024</u>

Respectfully submitted,

*/s/ Matthew P. Forsberg*
Matthew P. Forsberg
TX State Bar No. 24082581
Matt@FieldsLaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

**LAW OFFICE OF JONATHAN A. HEEPS**

*/s/ Jonathan A. Heeps*                         .
Jonathan A. Heeps
TX State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com

COUNSEL FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

August 20, 2024                          /s/ Matthew P. Forsberg
Date                                     Matthew P. Forsberg